Warner, J.
Appellant DFG Group challenges the trial court’s order approving a class action with appellee as the class representative in this litigation over alleged violations of the Florida Deceptive and Unfair Trade Practices Act (“FDUTPA”) in connection with the purchase of mausoleum crypts. §§ 501.201-.213, Fla. Stat. (2012). Appellant claims that appellee lacks standing to be a class representative as it made no representations to him to give rise to any liability, and it is not liable for FDUTPA violations by its predecessor. We agree and reverse.
The initial complaint, which was not filed as a class action, alleged that appellee, Mark S. Stern, through his companion, purchased a crypt in Heritage Manor Memorial Park of Boca Raton in 1999. At the time, Stern alleged that representatives of Heritage Manor made several material representations to him: 1) the North Sanctuary was designated and reserved only for the burial or encrypting of the remains of persons of the Jewish faith; 2) the North Sanctuary construction was to include certain materials and/or design elements; and 3) the interior crypts and niches sold as “chapel view” in the North Sanctuary would remain as “chapel view” crypts and niches.
After Stern’s purchase, Heritage Manor sold the cemetery to DFG Group, d/b/a “The Gardens.” Thereafter, Stern made several visits to the cemetery over the years and discovered that not all persons buried in the North Sanctuary appeared to be of the Jewish faith; the North Sanctuary was being redesigned and did not include the same design elements represented to him at his purchase; and his crypt no longer had a chapel view.
Although he had negotiated the right to sell his crypt back to Heritage Manor in his purchase contract (a provision unique to his agreement), Stern sued Heritage Manor and DFG in 2012 for FDUTPA violations and violations of the Funeral, Cemetery, and Consumer Services Act. The complaint alleged various misrepresentations, all of which were made by Heritage Manor representatives. The deceptive acts concerned marketing that the North Sanctuary of the Mausoleum was to be exclusively Jewish; the sanctuary was intended to be “beautiful” with specific attributes (stained glass, high ceiling, inlaid with gold leaf); and the “chapel view” for which he and class members paid a premium would remain a chapel view. Sometime after the filing of the complaint, Heritage Manor settled with Stern and ceased to be a party to the proceedings.
Three years later, Stern moved to amend his complaint to allege a class action and for class certification, seeking to represent the class. After a hearing, the *1238 trial court certified three subclasses to include “[a]ll natural persons and business entities who purchased a crypt or niche from DFG Group, LLC or its predecessor based upon deceptive or unfair representations” related to the North Sanctuary being dedicated to..the Jewish faith, being built with certain design elements, and maintaining the “chapel view” of certain crypts and niches.
DFG appeals from this order. Initially, DFG • contends that Stern lacks standing to bring a class action against it because it made no representations to Stern, nor did Stern purchase any crypts from DFG. Further, DFG contends' that it did not assume any FDUTPA liability in its asset purchase agreement with Heritage. The issue of standing is reviewed de novo. See Sosa v. Safeway Premium, Fin. Co., 73 So.3d 91, 116 (Fla. 2011). We agree that Stern lacks standing.
“The standing of the class representative is a threshold inquiry that must be addressed and answered in determining commonality and typicality of a class,” Neighborhood Health P’ship, Inc. v. Fischer, 913 So.2d 703, 706 (Fla. 3d DGA 2005). Where the purported class representative has no live claim against the defendant, the class should not be certified. Id.; see also Olen Props. Corp. v. Moss, 981 So.2d 515, 517 (Fla. 4th DCA 2008); United Auto. Ins. Co. v. Diagnostics of S. Fla., Inc., 921 So.2d 23, 25 (Fla. 3d DCA 2006).
“[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.” Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d DCA 2006), Stern did not purchase any crypt from DFG. DFG. made no representations to him to induce him to enter into a purchase contract. Therefore, he suffered no injury caused by representations made by DFG. Wooden v. Bd. of Regents of the Univ. Sys. of Ga., 247 F.3d 1262, 1288 (11th Cir. 2001) (“[J]ust as a plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent.”).
In addition, DFG has no liability for any possible FDUTPA claim Stern may have had against Heritage, In Bernard v. Kee Manufacturing Co., 409 So.2d 1047 (Fla. 1982), the court established the requirements to impose liability on a successor for the liabilities of a selling predecessor:
The vast majority of jurisdictions follow the traditional corporate law rule which does not impose the liabilities of the selling predecessor upon the buying successor company unless (1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.
Id. at 1049; see also Caplan v. 1616 E. Sunrise Motors, Inc., 522 So.2d 920, 921 (Fla. 3d DCA 1988) (purchaser of an automobile dealership was not liable for Lemon Law violations of its predecessor- because none of the exceptions to the general rule of successor liability as set forth in Bernard were present).
In this case, the purchase and sale contract between Heritage and DFG constituted an asset purchase agreement. In it, DFG agreed to assume the contractual liabilities of.Heritage as well as the development of the cemetery. None of the exceptions to the general rule against successor liability listed in Bernard were present. Thus, while DFG may be liable for any violations of the contract between Stern and Heritage, it did not assume *1239 liability for any torts or. fraudulent misrepresentations made by Heritage.
Because Stern lacks standing to pursue FDUTPA claims against DFG, the trial court erred in granting class certification and class representative status. We thus reverse the order of the trial court and remand for further proceedings.
Gross and Forst, JJ., concur.